1   KAREN P. HEWITT
    United States Attorney
2   AARON B. CLARK
    Assistant U.S. Attorney
3   California State Bar No. 239764
    United States Attorney's Office
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-6787/(619) 235-2757 (Fax)
    Email: aaron.clark@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          )   Criminal Case No. 08CR0647-JM
                                       )
11                         Plaintiff,  )   DATE:        April 11, 2008
                                       )   TIME:        11:00 a.m.
12               v.                    )   Before Honorable Jeffrey T. Miller
                                       )
13  ALMA ANDREA SANCHEZ,               )   UNITED STATES' RESPONSE TO
                                       )   DEFENDANT'S MOTIONS TO:
14                       Defendant(s). )
                                       )   (1)   COMPEL DISCOVERY/
15                                     )         PRESERVE EVIDENCE
                                       )   (2)   PRESERVE AND REWEIGH
16                                     )         NARCOTIC EVIDENCE;
                                       )   (3)   DISMISS INDICTMENT DUE TO
17                                     )         IMPROPER GRAND JURY;
                                       )   (4)   GRANT LEAVE TO FILE
18                                     )         FURTHER MOTIONS
                                       )
19                                     )
                                       )   TOGETHER WITH STATEMENT OF
20  _____  )   FACTS AND MEMORANDUM
                                       )   OF POINTS AND AUTHORITIES
21
22          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its

23  counsel, Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant U.S. Attorney,

24  and hereby files its Response to Defendant's Motions in the above-referenced case. Said Response

25  is based upon the files and records of this case together with the attached statement of facts and

26  memorandum of points and authorities.

27  //

28

1    DATED: March 28, 2008.

2                                              Respectfully submitted,

3                                              KAREN P. HEWITT
                                               United States Attorney
4

5                                              s/ Aaron B. Clark
                                               AARON B. CLARK
6                                              Assistant United States Attorney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   2

1  KAREN P. HEWITT
   United States Attorney
2  AARON B. CLARK
   Assistant U.S. Attorney
3  California State Bar No. 239764
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6787/(619) 235-2757 (Fax)
   Email: aaron.clark@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10                              )    Criminal Case No. 08CR0647-JM
    UNITED STATES OF AMERICA,   )
11                              )    DATE:        April 11, 2008
                    Plaintiff,  )    TIME:        11:00 a.m.
12                              )    Before Honorable Jeffrey T. Miller
             v.                 )
13                              )
    ALMA ANDREA SANCHEZ,        )    UNITED STATES' STATEMENT OF
14                              )    FACTS AND MEMORANDUM OF
                  Defendant(s). )    POINTS AND AUTHORITIES
15  _____)

16                              I

17            **STATEMENT OF THE CASE**

18        The Defendant, Alma Andrea Sanchez (hereinafter "Defendant"), was charged by a grand

19  jury on March 5, 2008 with violating 21 U.S.C. §§ 952 and 960, importation of marijuana, and 21

20  U.S.C. § 841(a)(1), possession of marijuana with the intent to distribute.  Defendant was arraigned

21  on the Indictment on March 11, 2008, and entered a plea of not guilty.

22                              II

23              **STATEMENT OF FACTS**

24        Defendant was apprehended on the evening of February 24, 2008 by United States

25  Customs and Border Protection ("CBP") Officers at the Calexico, California (West) Port of Entry.

26

27

28                              3

1    There, Defendant entered the vehicle inspection lanes as the driver, sole occupant, and registered

2    owner of a 1999 Chevy Blazer ("the vehicle").

3         At primary inspection, Defendant provided a negative customs declaration, claimed to have

4    owned the vehicle for four months.  She also claimed to be a United States citizen, and stated she

5    had gone to Mexicali for a few hours to visit friends.  CBP Officer Oceguera noted that Sanchez

6    seemed overly friendly during the brief encounter and had a difficult time answering questions.

7    Officer Oceguera thereafter referred Defendant to secondary inspection.

8         At secondary inspection, Defendant again stated that she had owned the vehicle for four

9    months and had been to Mexico to visit friends.  A Narcotic Detector Dog ("NDD") then screened

10   the vehicle and alerted to the rear bumper area.  Further inspection of the vehicle ultimately

11   revealed a 42 packages of marijuana hidden inside the fuel tank, spare tire, four door panels, and

12   dashboard assembly.  The total weight of the packages was approximately 54.10 kilograms

13   (119.02 lbs).

14        In a post-<u>Miranda</u> statement, Defendant denied knowledge of the narcotics but proceeded

15   to offer contradictory versions of the events leading to her arrest.

16

17                                      **III**

18                   **MEMORANDUM OF POINTS AND AUTHORITIES**

19   **A.    DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

20        **1.    The Government Has or Will Disclose Information Subject To Disclosure
             Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

21

22        The government has disclosed, or will disclose well in advance of trial, any statements

23   subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements

     *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or

24   recorded statements, written records containing substance of Defendant's oral statements *in*

25   *response to government interrogation*, and Defendant's grand jury testimony).

26   //

27

28                                       4

1       a.      The Government Will Comply With Rule 16(a)(1)(D)

2          To the extent he has a criminal record, Defendant has already been provided with his or

3   her own "rap" sheet and the government will produce any additional information it uncovers

4   regarding Defendant's criminal record.  Any subsequent or prior similar acts of Defendant that the

5   government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be

6   provided, along with any accompanying reports, at a reasonable time in advance of trial.

7       b.      The Government Will Comply With Rule 16(a)(1)(E)

8          The government will permit Defendant to inspect and copy or photograph all books,

9   papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof,

10  that are material to the preparation of Defendant's defense or are intended for use by the

11  government as evidence-in-chief at trial or were obtained from or belong to Defendant.

12         Reasonable efforts will be made to preserve relevant physical evidence which is in the

13  custody and control of the investigating agency and the prosecution, with the following

14  exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed

15  after 60 days, and vehicles are routinely and periodically sold at auction.  Records of radio

16  transmissions, if they existed, are frequently kept for only a short period of time and may no longer

17  be available. Counsel should contact the Assistant United States Attorney assigned to the case two

18  weeks before the scheduled trial date and the Assistant will make arrangements with the case agent

19  for counsel to view all evidence within the government's possession.

20      c.      The Government Will Comply With Rule 16(a)(1)(F)

21         The government will permit Defendant to inspect and copy or photograph any results or

22  reports of physical or mental examinations, and of scientific tests or experiments, or copies

23  thereof, that are within the possession of the government, and by the exercise of due diligence may

24  become known to the attorney for the government and are material to the preparation of the

25  defense or are intended for use by the government as evidence-in-chief at the trial.  Counsel for

26  Defendant should contact the Assistant United States Attorney assigned to the case and the

27

28                                              5

1    Assistant will make arrangements with the case agent for counsel to view all evidence within the

2    government's possession.

3          d.    The Government Will Comply With Its Obligations Under <u>Brady v.</u>

4                <u>Maryland</u>

5          The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>,

6    373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory

7    evidence within its possession that is material to the issue of guilt or punishment.  Defendant,

8    however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to

9    the accused, or that pertains to the credibility of the government's case.  As stated in <u>United States</u>

10   <u>v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

11         [T]he prosecution does not have a constitutional duty to disclose every bit of
           information that might affect the jury's decision; it need only disclose information

12         favorable to the defense that meets the appropriate standard of materiality.

13   611 F.2d at 774-775 (citations omitted).  <u>See also</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685,

14   687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

15   exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any

16   pretrial privileges not contained in the Federal Rules of Criminal Procedure).

17         e.    <u>Discovery Regarding Government Witnesses</u>

18              (1)    <u>Agreements.</u>  The government has disclosed or will disclose the

19   terms of any agreements by Government agents, employees, or attorneys with witnesses that

20   testify at trial.  Such information will be provided at or before the time of the filing of the

21   Government's trial memorandum.[1]  The government will comply with its obligations to disclose

22   impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

23

24

25   [1]    As with all other offers by the government to produce discovery earlier than it is required
     to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared

26   to make early discovery production, or if there is a strategic reason not to do so as to certain
     discovery, the government reserves the right to withhold the requested material until the time it

27   is required to be produced pursuant to discovery laws and rules.

28                                          6

1    (2)    <u>Bias or Prejudice.</u>  The government has provided or will provide

2  information related to the bias, prejudice or other motivation to lie of government trial witnesses

3  as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

4    (3)    <u>Criminal Convictions.</u>  The government has produced or will

5  produce any criminal convictions of government witnesses plus any *material* criminal acts which

6  did not result in conviction.  The government is not aware that any prospective witness is under

7  criminal investigation.

8    (4)    <u>Ability to Perceive.</u>  The government has produced or will produce

9  any evidence that the ability of a government trial witness to perceive, communicate or tell the

10  truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

11  or are alcoholics.

12    (5)    <u>Witness List.</u>  The government will endeavor to provide Defendant

13  with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

14  trial memorandum is filed, although delivery of such a list is not required.  <u>See</u> <u>United States v.</u>

15  <u>Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d  933, 936 (9th Cir.

16  1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not

17  entitled to the production of addresses or phone numbers of possible government witnesses.  <u>See</u>

18  <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974).

19  Defendant has already received access to the names of potential witnesses in this case in the

20  investigative reports previously provided to him or her.

21    (6)    <u>Witnesses Not to Be Called.</u>  The government is not required to

22  disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

23  performed.  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u>  <u>United States v. Gardner</u>, 611 F.2d

24  770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendant

25  for discovery concerning any individuals whom the government does not intend to call as

26  witnesses.

27

28    7

1       (7)    <u>Favorable Statements.</u>  The government has disclosed or will

2   disclose the names of witnesses, if any, who have made favorable statements concerning

3   Defendant which meet the requirements of <u>Brady</u>.

4       (8)    <u>Review of Personnel Files.</u>  The government has requested or will

5   request a review of the personnel files of all federal law enforcement individuals who will be

6   called as witnesses in this case for <u>Brady</u> material.  The government will request that counsel for

7   the appropriate federal law enforcement agency conduct such review.  <u>United States v. Herring</u>,

8   83 F.3d 1120 (9th Cir. 1996); <u>see</u>, <u>also</u>, <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir.

9   1992); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

10   Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v.</u>

11   <u>Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

12   to the defense that meets the appropriate standard of materiality . . ."  <u>United States v. Cadet</u>, 727

13   F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of

14   the information within its possession in such personnel files, the information will be submitted to

15   the Court for <u>in</u> <u>camera</u> inspection and review.

16       (9)    <u>Government Witness Statements.</u>  Production of witness statements

17   is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

18   on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States</u>

19   <u>v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and

20   therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject

21   to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under

22   the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

23   The government reserves the right to withhold the statements of any particular witnesses

24   it deems necessary until after the witness testifies.  Otherwise, the government will disclose the

25   statements of witnesses at the time of the filing of the government's trial memorandum, provided

26   that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal

27

28   8

1   Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse

2   Jencks" statements at that time.

3

4           f.      The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

5         Although the government has no objection to the preservation of agents' handwritten notes,

6   it objects to requests for full production for immediate examination and inspection.  If certain

7   rough notes become relevant during any evidentiary proceeding, those notes will be made

8   available.

9         Prior production of these notes is not necessary because they are not "statements" within

10  the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a

11  witness' assertions *and* they have been approved or adopted by the witness.  United States v.

12  Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin,  659 F.2d 932,

13  936-938 (9th Cir. 1981).

14          g.      All Investigatory Notes and Arrest Reports

15        The government objects to any request for production of all arrest reports, investigator's

16  notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such

17  reports, except to the extent that they include Brady material or the statements of Defendant, are

18  protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

19  connection with the investigation or prosecution of the case."

20        Although agents' reports may have already been produced to the defense, the government

21  is not required to produce such reports, except to the extent they contain Brady or other such

22  material.  Furthermore, the government is not required to disclose all evidence it has or to render

23  an accounting to Defendant of the investigative work it has performed.  Moore v. Illinois,

24  408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

25  //

26  //

27

28                          9

1    h.    <u>Expert Witnesses</u>.

2    Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

3 memorandum, the government will provide the defense with notice of any expert witnesses the

4 testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

5 Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

6 reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

7 defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

8    i.    Information Which May Result in Lower Sentence.

9    Defendant has claimed or may claim that the government must disclose information about

10 any cooperation or any attempted cooperation with the government as well as any other

11 information affecting Defendant's sentencing guidelines because such information is discoverable

12 under Brady v. Maryland.  The government respectfully contends that it has no such disclosure

13 obligations under Brady.

14    The government is not obliged under Brady to furnish a defendant with information which

15 he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied,

16 479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977).  Brady is a rule

17 of disclosure.  There can be no violation of Brady if the evidence is already known to Defendant.

18    Assuming that Defendant did not already possess the information about factors which

19 might affect their respective guideline range, the government would not be required to provide

20 information bearing on Defendant's mitigation of punishment until after Defendant's conviction

21 or plea of guilty and prior to his sentencing date.  "No [Brady] violation occurs if the evidence is

22 disclosed to the defendant at a time when the disclosure remains of value."  United States v.

23 Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

24 //

25 //

26 //

28    10

1    **B.**    **RE-WEIGHING AND RETESTING THE EVIDENCE IS UNNECESSARY AND**

2    **NOT REQUIRED**

3         Defendant has requested that the Court issue an order to retest and re-weigh the evidence.

4    Although the Government does not oppose Defendant's right pursuant to Fed. R. Crim. P. 16 to

5    inspect and examine the seized evidence, Defendant provides no justifiable basis to retest and re-

6    weigh the evidence.  This Court is not required to order the retesting and re-weighing of the

7    evidence, and such an order would constitute a waste of Government resources and an unnecessary

8    delay in the case.

9         District courts have discretion to deny a defendant's request to retest and/or re-weigh

10   evidence.  See  United States v. Garcia, 900 F.2d 571, 574 (2d Cir. 1990); see also United States

11   v. Orozco-Rodriguez, 60 F.3d 705, 707 (10th Cir. 1995); United States v. Small, 74 F.3d 1276,

12   1287 (D.C. Cir. 1996).  Where nothing is presented to raise a "reasonable dispute" over the weight

13   of drugs, a district court does not abuse its discretion in refusing to order the re-weigh.  Garcia,

14   900 F.2d at 574.  For instance, unless a court has reason to believe that any discrepancy in the

15   weight of the drugs is enough to make a defendant eligible for a lower sentence or have a lower

16   mandatory minimum apply to the defendant's case, it is within the court's discretion to deny a

17   defendant's request to re-weigh the evidence.  See Orozco-Rodriguez, 60 F.3d at 707; Small, 74

18   F.3d at 1287 (holding that the district court did not abuse its discretion in denying the defendant's

19   motion to re-weigh the drugs where the defendant failed to provide any reason to dispute the Drug

20   Enforcement Administration's laboratory analysis and where the defendant had the opportunity

21   to cross-examine the DEA chemist at trial).  The simple fact that the weight of the drugs at issue

22   may be "close to the line" between two guideline ranges or a mandatory minimum cutoff does not

23   raise a "reasonable dispute."  Garcia, 900 F.2d at 575 (affirming district court's denial of the

24   defendant's request to re-weigh crack cocaine at time of sentencing where weight of drugs was

25   only 9.3 milligrams over the applicable guideline range minimum).

26   //

27

28                                              11

1    Defendant has not presented any evidence or argument to raise a "reasonable dispute"

2    about the weight or purity of drugs at issue.  Unless and until such a possibility can be established,

3    the Court should exercise its clear discretion to deny her request for a retest and re-weigh of the

4    drugs.  See Orozco-Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287; Garcia, 900 F.2d at 574.

5    Such an order without a showing of a "reasonable dispute" would amount to an unnecessary

6    expenditure of Government resources and delay in this case.

7    It should be noted that the Ninth Circuit has, on at least one occasion, held that, in the

8    context of a supervised release revocation proceeding, a supervisee is entitled to retest positive

9    urine samples.  United States v. Martin, 984 F.2d 308 (9th Cir. 1993).  That case, however, is

10   distinguishable from the present circumstances. First, in Martin, the defendant was "denied all but

11   the most cursory opportunity to impeach or refute the evidence" supporting the revocation of his

12   supervised release.   Martin, 984 F.2d at 312.   The court found it important that the only

13   Government witness available for cross-examination on the defendant's positive drug test was a

14   drug counselor who had no knowledge as to the testing procedures employed or the chain of

15   custody.  Id.  Here, there will be no such danger, as Defendant will have a full opportunity to

16   cross-examine the DEA's chemist on the procedures employed and results reached in this case.

17   The second reason relied upon by the Martin court is also of no benefit to Defendant.  The court

18   there found that the Government failed to demonstrate that it had "good cause" to avoid the retest

19   because the Government did not provide any "conventional substitutes for live testimony."

20   Martin, 984 F.2d at 313 (quoting Gagnon v. Scarpelli, 411 U.S. 778, 783 n.5 (1973)).  In contrast,

21   in this case Defendant will have every opportunity to confront and challenge the findings made

22   by the DEA chemist at trial.   The final reason relied upon by the Martin court is equally

23   inapplicable to this case.  The Ninth Circuit decided not to follow other circuits that had held that

24   results from such urinalysis tests are "so inherently reliable" that they should be accepted without

25   any right to confront the results.  Here, again, there is no such danger because there will be no

26   infringement upon Defendant's right to confront evidence presented against him.

27

28                                    12

## C. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

### 1. Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by United States District Judge Larry A. Burns on January 10, 2007. Defendant's Memorandum of Points and Authorities at 6-23 (hereafter "Memorandum").[2] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper.  Defendant appears to argue that these alleged improprieties require dismissal of the Indictment.

In making her arguments concerning the two separate instructions, Defendant attacks two separate bases relating to empaneling of the grand jury, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction, Defendant appears to urge this Court to dismiss the Indictment by exercising its supervisory powers over grand jury procedures.[3]  This is a practice the Supreme Court discourages as

---

[2]  Defendant supplies a partial transcript of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  See Exhibit A to Memorandum (hereafter "Exhibit A").  Defendant also supplies a partial transcript of the grand jury proceedings which records the voir dire of several potential witnesses.  See Exhibit B to Memorandum (hereafter "Exhibit B").  To amplify the record herein, the United States is supplying a redacted supplemental transcript which records relevant portions of the voir dire proceedings.  See Appendix to United States' Response and Opposition to Defendant's Motions (hereafter "United States' Appendix").

[3] Defendant's Motion never actually addresses the relief requested (i.e. dismissal of the indictment) except in the heading of the memorandum. [Defendant's Memorandum at 6.] Neither does Defendant discuss the standard or grounds on which the Court is to measure whether relief can be afforded.  The United States' response, however,  assumes this was likely a mere oversight by Defendant.

13

1    Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the

2    grand jury's operational separateness from its constituting court, it should come as no surprise that

3    we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes

4    of grand jury procedure."). <u>Id.</u> <u>Isgro</u> reiterated:

5           [A] district court may draw on its supervisory powers to dismiss an
        indictment. The supervisory powers doctrine "is premised on the inherent ability
6       of the federal courts to formulate procedural rules not specifically required by the
        Constitution or Congress to supervise the administration of justice." <u>Before it may</u>
7       <u>invoke this power, a court must first find that the defendant is actually prejudiced</u>
        <u>by the misconduct.</u> Absent such prejudice – that is, absent "'grave' doubt that the
8       decision to indict was free from the substantial influence of [the misconduct]" – a
        dismissal is not warranted.

9

10   974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction,

11   in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the

12   Constitution as a reason to dismiss the Indictment. <u>See</u> Memorandum at 23 ("A grand jury so

13   badly misguided is no grand jury at all under the Fifth Amendment."). Concerning that kind of

14   a contention, <u>Isgro</u> stated:

15      [A] court may dismiss an indictment if it perceives constitutional error that
        interferes with the grand jury's independence and the integrity of the grand jury
16      proceeding. "Constitutional error is found where the 'structural protections of the
        grand jury have been so compromised as to render the proceedings fundamentally
17      unfair, allowing the presumption of prejudice' to the defendant." Constitutional
        error may also be found "if [the] defendant can show a history of prosecutorial
18      misconduct that is so systematic and pervasive that it affects the fundamental
        fairness of the proceeding or if the independence of the grand jury is substantially
19      infringed."

20   974 F.2d at 1094 (citation omitted).[4]

21          The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

22          You cannot judge the wisdom of the criminal laws enacted by Congress,
        that is, whether or not there should or should not be a federal law designating
23      certain activity as criminal. That is to be determined by Congress and not by you.

24

_____

25          [4] In <u>Isgro</u>, the defendants choose the abrogation of constitutional rights route when
     asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did
26   not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights
     sufficient to support the dismissal of the indictment." (relying on <u>Williams</u>)).
27

28                                              14

1    408 F.3d at 1187, 1202.

2          The United States Attorney and his Assistant United States Attorneys will
      provide you with important service in helping you to find your way when
3      confronted with complex legal problems.   It is entirely proper that you should
      receive this assistance. If past experience is any indication of what to expect in the
4      future, then you can expect candor, honesty, and good faith in matters presented
      by the government attorneys.

5

6    408 F.3d at 1187, 1206.

7          Concerning the "wisdom of the criminal laws" instruction, the court stated it was

8    constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

9    policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

10   nullification.'"[5/] 408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools

11   for informing itself of the policy or legal justification for the law;  it receives no briefs or

12   arguments from the parties.   The grand jury has little but its own visceral reaction on which to

13   judge the 'wisdom of the law.'"  Id.

14         Concerning the "United States Attorney and his Assistant United States Attorneys"

15   instruction, the court stated:

16         We also reject this final contention and hold that although this passage may
      include unnecessary language, it does not violate the Constitution.   The "candor,
17     honesty, and good faith" language, when read in the context of the instructions as
      a whole, does not violate the constitutional relationship between the prosecutor and
18     grand jury. . . .   The instructions balance the praise for the government's attorney
      by informing the grand jurors that some have criticized the grand jury as a "mere
19     rubber stamp" to the prosecution and reminding them that the grand jury is
      "independent of the United States Attorney[.]"

20

21   408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the

22   grand jury of the presumption of regularity and good faith that the branches of government

23   ordinarily afford each other."  Id.

24   ──────────────

25         [5] The Court acknowledged that as a matter of fact jury nullification does take place, and
     there is no way to control it.  "We recognize and do not discount that some grand jurors might in
26   fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.
     For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's
27   motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

28                                         15

1

2.      **The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

2       Concerning whether the new grand jurors should concern themselves with the wisdom of

3   the criminal laws enacted by Congress, Judge Burns' full instruction stated:

4       You understood from the questions and answers that a couple of people were
        excused, I think three in this case, because they could not adhere to the principle
5       that I'm about to tell you.

6           But it's not for you to judge the wisdom of the criminal laws enacted by
        congress; that is, whether or not there should be a federal law or should not be a
7       federal law designating certain activity is criminal is not up to you.  That's a
        judgment that congress makes.

8
            And if you disagree with the judgment made by congress, then your option
9       is not to say "Well I'm going to vote against indicting even though I think that the
        evidence is sufficient" or "I'm going to vote in favor of even though the evidence
10      may be insufficient."  Instead, your obligation is to  contact your congressman or
        advocate for a change in the laws, but not to bring your personal definition of what
11      the law ought to be and try to impose that through applying it in a grand jury
        setting.

12

13  Exhibit A at 8-9.[6/]

14      In line with <u>Navarro-Vargas</u>, Judge Burns instructed the grand jurors that they were

15  forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether

16  or not there should be a federal law or should not be a federal law designating certain activity [as]

17  criminal is not up to you." Exhibit A at 8.  Defendant claims, however, that the instructions "make

18  it painfully clear that grand jurors simply may not choose not to indict in the event of what appears

19  to them to be an unfair application of the law: should 'you disagree with that judgment made by

20  Congress, then your option is not to say 'well, I'm going to vote against indicting even though I

21  think that the evidence is sufficient. . . .'" Memorandum at 15.   Defendant contends that this

22  addition to the approved instruction "flatly bars the grand jury from declining to indict because

23

24      [4]   The United States' Appendix recounts the excusing of the three individuals.  This
    transcript involves the voir dire portion of the grand jury selection process, and has been redacted
25  to include redaction of the individual names, so as to provide only the relevant three incidents
    wherein prospective grand jurors were excused.  Specifically, the pages of the supplemental
26  transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2;
27  38, line 9; and 44, line 17.

28                                                  16

1    the grand jurors disagree with a proposed prosecution." Id. at 15.  Defendant further contends that

2    the flat prohibition was preemptively reinforced by Judge Burns when excused prospective grand

3    jurors.

4        In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

5    instruction renders irrelevant the debate about what the word "should" means.  Memorandum at

6    15.  Defendant contends that "the instruction flatly bars the grand jury from declining to indict

7    because they disagree with a proposed prosecution." Id. at 115.  This argument mixes-up two of

8    the holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

9        Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the

10   wisdom of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws

11   enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202,

12   is not an expression of discretion.  Jury nullification is forbidden although acknowledged as a sub

13   rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely

14   within his rights, and within the law, when he excused the three prospective grand jurors because

15   of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him

16   to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we

17   will establish, this reminder did not pressure the grand jurors to give up their discretion not to

18   return an indictment.  Judge Burns' words cannot be parsed to say that they flatly barred the grand

19   jury from declining to indict because the grand jurors disagree with a proposed prosecution,

20   because they do not say that.  That aspect of a grand jury's discretionary power (i.e., disagreement

21   with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction

22   wherein the term "should" was germane.[7]  408 F.3d at 1204-06.  This other instruction bestows

23

24        [7]  That instruction is not at issue here.  It read as follows:

25            [Y]our task is to determine whether the government's evidence as presented

26        to you is sufficient to cause you to conclude that there is probable cause to believe
            that the accused is guilty of the offense charged.   To put it another way, you

27                                                                            (continued...)

28                                            17

discretion on the grand jury not to indict.[8]  In finding this instruction constitutional, the court stated in words that ring true here: "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

---

(...continued)
> should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[8] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

18

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Exhibit A at 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the supplemental transcript excerpts (see United States' Appendix) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice – that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.

19

1          . . . . You'll work closely with the U.S. Attorney's Office in your
2    investigation of cases.

3    Exhibit A at 11.

4          [I]n my experience here in the over 20 years in this court, that kind of tension does
     not exist on a regular basis, that I can recall, between the U.S. Attorney and the
5    grand juries. They generally work together.

6    Exhibit A at 12.

7          Now, again, this emphasizes the difference between the function of the
     grand jury and the trial jury. You're all about probable cause. If you think that
8    there's evidence out there that might cause you to say "well, I don't think probable
     cause exists," then it's incumbent upon you to hear that evidence as well. As I told
9    you, in most instances, the U.S. Attorneys are duty-bound to present evidence that
     cuts against what they may be asking you to do if they're aware of that evidence.
10

11   Exhibit A at 20.[9]

12         As a practical matter, you will work closely with government lawyers. The U.S.
     Attorney and the Assistant U.S. Attorneys will provide you with important services
13   and help you find your way when you're confronted with complex legal matters.
     It's entirely proper that you should receive the assistance from the government
14   lawyers.

15         But at the end of the day, the decision about whether a case goes forward
     and an indictment should be returned is yours and yours alone. If past experience
16   is any indication of what to expect in the future, then you can expect that the U.S.
     Attorneys that will appear in front of you will be candid, they'll be honest, that
17   they'll act in good faith in all matters presented to you.

18   Exhibit A at 26-27.

19         Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that

20   cuts against what they may be asking you to do if they're aware of that evidence," Defendant

21   proposes that by making that statement, Judge Burns also "assure[d] the grand jurors that

22

23   _____

24         [9] Just prior to this instruction, Judge Burns had informed the grand jurors that:

25   [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a
     full-blown trial, you're likely in most cases not to hear the other side of the
26   story, if there is another side to the story.

27   Exhibit A at 19.

28                                        20

1    prosecutors would present to them evidence that tended to undercut probable cause."

2    Memorandum at 21. Defendant then ties this statement to the later instruction which "advis[ed]

3    the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them]

4    will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'"

5    Id. at 22.. From this lash-up Defendant contends:

6            These instructions create a presumption that, in cases where the prosecutor
         does not present exculpatory evidence, no exculpatory evidence exists. A grand
7        juror's reasoning, in a case in which no exculpatory evidence was presented, would
         proceed along these lines:

8
             (1) I have to consider evidence that undercuts probable cause.
9
             (2) The candid, honest, duty-bound prosecutor would, in good faith,
10           have presented any such evidence to me, if it existed.

11           (3) Because no such evidence was presented to me, I may conclude
             that there is none.
12
             Even if some exculpatory evidence were presented, a grand juror would
13       necessarily presume that the evidence presented represents the universe of all
         available exculpatory evidence; if there was more, the duty-bound prosecutor
14       would have presented it.

15           The instructions therefore discourage investigation – if exculpatory
         evidence were out there, the prosecutor would present it, so investigation is a waste
16       of time and provide additional support to every probable cause determination: i.e.,
         this case may be weak, but I know that there is nothing on the other side of the
17       equation because it was not presented. A grand jury so badly misguided is no
         grand jury at all under the Fifth Amendment.

18   Memorandum at 23.[10]

19       Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present

20   evidence that cuts against what they may be asking you to do if they're aware of that evidence,"

21   is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury

22

23       _____

24       [10] The term "presumption" is too strong a word in this setting. The term "inference" is
     more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are
25   (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive
     presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing
26   Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster
     County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25
27   F.3d 890, 897 (9th Cir. 1994).

28                                         21

has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[11] (emphasis added)).  See also United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[12]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[13]  Specifically, it appears he is aware of USAM Section 9-11.233, which states:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a

---

[11]  Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."  504 U.S. at 55.  See also United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

[12]  He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16, 17-18.

[13]  The USAM is available on the World Wide Web at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

22

grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[14]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ."  (Emphasis added.)[15]

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because

---

[14] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the Internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[15] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶"E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm. htm.

no "substantial" exculpatory evidence exists.[16/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[17/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing

---

[16]  Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

[17]  Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

24

1    in the Constitution which requires a prosecutor to give the person under investigation the right to

2    present anything to the grand jury (including his or her testimony or other exculpatory evidence),

3    and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096

4    ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury

5    deliberations.").    That the USAM imposes a duty on United States Attorneys to present

6    "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM

7    excludes defendants from reaping any benefits from the self-imposed policy.[18]  Therefore, while

8    the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms

9    of advising the grand jurors of their rights and responsibilities, and does not cast an

10   unconstitutional pall upon the instructions which requires dismissal of the indictment in this case

11   or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the

12   United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at

13   1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly

14   "remind[ed] the grand jury that it stands between the government and the accused and is

15   independent," which was also required by Navarro-Vargas.  408 F.3d at 1207.  In this context the

16   unnecessary "duty-bound" statement does not mean the instructions were constitutionally

17   defective requiring dismissal of this indictment or any indictment.

18       The "duty bound" statement constitutional contentions raised by Defendant do not indicate

19   that the "'structural protections of the grand jury have been so compromised as to render the

20   proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

21   "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

22   pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

23   grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this

24   Indictment, or any other indictment, need not be dismissed.

25   _____

26       [18]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
     failure to present exculpatory information to a grand jury per Williams, he or she could lose his
27   or her job with the United States Attorney's Office for such a failure per the USAM.

28                                               25

**D.    NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

### IV

### CONCLUSION

For the foregoing reasons, the government respectfully requests that Defendant's motions, except where not opposed, be denied.

DATED: March 28, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Aaron B. Clark
AARON B. CLARK
Assistant United States Attorney

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES' EXHIBIT**

Supplemental redacted transcript of Hon. Larry A. Burns's instructions to the January 2007 Grand Jury

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff

      v.

ALMA ANDREA SANCHEZ,

           Defendant(s).

Case No. 08CR0647-JM

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

      I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

      I am not a party to the above-entitled action.  I have caused service of UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

      1.  Bridget Kennedy, Esq.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed on March 28, 2008.

                        s/ Aaron B. Clark
                        AARON B. CLARK